**SOUTHWEST KEY PROGRAM, INC., d/b/a Texas Sky Program, Inc., and La Esperanza Home for Boys, Appellant,**

**v.**

**Carlo GIL–PEREZ, Appellee.**

**No. 13–99–114–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 9, 2000.

Kevin D. Jewell, Magenheim, Bateman & Helfand, Houston, for Appellant.

Kimberly W. Brown, Timothy H. Pletcher, Helm, Pletcher, Bowen & Saunders, Houston, for Appellee.

BEFORE: Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## OPINION

RODRIGUEZ, J.

Appellee, Carlos Gil–Perez, filed suit alleging appellants, Southwest Key Program, Inc. d/b/a Texas Key Program, Inc., (Southwest Key) and La Esperanza Home for Boys (the Home),[1] were negligent and proximately caused his injuries and damages. The case was tried to a jury that found Southwest Key one hundred percent negligent and awarded $ 75,000 in damages, plus interest and costs. The court entered a final judgment against Southwest Key and the Home.[2] By three issues, appellants complain (1) the trial court erred in submitting appellee's case to the jury as ordinary negligence; (2) alternately, the evidence was factually and legally insufficient to support a negligence finding; and, (3) the trial court erred in refusing to credit the judgment against appellants in an amount equal to the medical expenses paid by appellants. We affirm.

In June 1994, appellants accepted placement of appellee at the Home through an agreement with the Texas Youth Commission (TYC). In September, Antonio Gracia, an employee of Southwest Key, took several resident boys, including appellee, to a local stadium to exercise and partici-

pate in recreational activities. Appellants encouraged their residents to participate in these activities by giving them extra points which were accumulated for privileges. It is undisputed that Gracia was responsible for supervising the residents of the Home on this trip, and that he was acting within the course and scope of his employment when the incident occurred. While at the stadium, appellee and the other residents joined non-residents in an informal, impromptu game of tackle football and appellee suffered a dislocated knee.

■ By their first issue, appellants contend that the trial court erred in submitting appellee's case to the jury as one of ordinary negligence.[3] Appellants argue that this is a sports injury case involving a participant and a non-participant, and urge this Court to adopt the heightened standard for recovery applicable in cases involving a participant versus a non-participant. Appellee, however, contends this is not a sports injury case, but rather a case of negligent supervision of a minor under appellants' care and control. As such, appellee urges that the standard is one of ordinary negligence.

■ A participant in athletic competition owes a legal duty not to injure another participant by conduct that either intentionally or recklessly disregards the safety of the other participant. *See Greer v. Davis*, 921 S.W.2d 325, 327–28 (Tex.App.— Corpus Christi 1996, writ denied) (to pre-

---

1. Southwest Key Program, Inc., d/b/a Texas Key Program, Inc., owns and operates La Esperanza Home for Boys in Brownsville, Texas, where Gil–Perez was a resident.

2. Christina Perez, appellee's natural mother and plaintiff below, is not a party to this appeal. The jury found no past medical expenses, and the court entered a take nothing judgment as to Christina Perez.

3. The court submitted the following liability question to the jury: "Did the negligence, if any, of the persons named below proximately cause the injury in question?" The jury answered "Yes" to "SOUTHWEST KEY PROGRAM, INC. d/b/a/ TEXAS KEY PROGRAM, INC., its employees, agents or servants," and "No" to "CARLOS GIL[-]PEREZ."

vail in cause of action for injuries sustained while participating in competitive contact sport, plaintiff must prove defendant participant acted recklessly or intentionally). The conduct of nonparticipants, such as sponsors and others whose duties extend to instruction, maintenance of equipment and facilities, and other considerations is judged by concepts of ordinary negligence. *See Moore v. Phi Delta Theta,* 976 S.W.2d 738, 741–42 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (competitive contact sports doctrine and heightened standard does not apply to non-participating sponsor of paint ball "war game"); *Connell v. Payne,* 814 S.W.2d 486, 488 (Tex.App.—Dallas 1991, writ denied) (where standard of intentionally or recklessly causing injury is applied to participant defendant, ordinary negligence is applied to non-participant polo club).

In the present case, the evidence reflects this was a recreational, impromptu football game between children who were residents of the Home and non-residents. Although the game occurred at an area away from the Home, the residents were under the care and supervision of an employee of the Home. Nonetheless, appellants, through their employees or agents, did not participate in the game. Further, in our opinion, the action of Gracia in allowing the children to play tackle football during their recreation time did not, as a matter of law, constitute appellants' "sponsorship" of the game. Therefore, because appellants neither participated nor sponsored the football game, we conclude this is not a sports injury case. Thus, the issue of whether a heightened standard of recovery requiring reckless or intentional conduct should be applied is not before us. Appellants' first issue is overruled.

By their second issue, appellants contend that, if the ordinary negligence standard is held to be the appropriate standard, the jury's finding of negligence is not supported by legally or factually sufficient evidence. Appellants contend there is no evidence that a duty existed, that appellants breached any duty, or that appellants proximately caused appellee's injury. Appellants also contend that the jury's failure to place any responsibility on appellee is against the great weight and preponderance of the evidence.

To sustain a cause of action for negligence, one must show the existence of some duty owed by one party to another, a breach of that duty, and damages that were proximately caused by the breach of the duty. *See Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.1998); *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

Appellee contends appellants had a duty to protect him from physical harm, and are liable to him based on the following theories of recovery: (1) negligence in failing to provide adequate instruction; (2) negligence in failing to provide adequate supervision; and (3) negligence in failing to provide adequate organization of the game, including the provision of equipment.[4]

Duty, a question of law, is the threshold inquiry in a negligence case. *See Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993); *Wal–Mart Stores, Inc. v. Tamez,* 960 S.W.2d 125, 127 (Tex.App.—Corpus Christi 1997, pet. denied). It is the obligation to conform to a particular standard of conduct. *See Valley Shamrock,*

---

4. We note that while appellants contend they had no duty to provide equipment for the football game, they do not argue that they had no duty to protect appellee, a resident of the Home, from physical injury by providing him with adequate supervision, instruction, or organization of other aspects of the football game.

*Inc. v. Vasquez,* 995 S.W.2d 302, 306 (Tex. App.—Corpus Christi 1999, no pet.); *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60, 64 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). "The duty of reasonable care required under a given set of facts may be based on common law principles, or the appropriate standard of conduct may be determined by statute." *See Wal–Mart Stores,* 960 S.W.2d at 128 (citations omitted). The court decides whether a duty exists from the facts surrounding the occurrence in question. *See id.* at 127–28 (citations omitted).

It is undisputed that appellee was a resident of the Home through appellants' agreement with the TYC. Appellants are required to comply with a variety of TYC regulations designed to ensure the safety of children under their supervision. One such requirement is that each youth in the TYC system is to be accorded certain basic rights, including the right to be protected from physical harm. *See* 37 Tex.Admin.Code. § 93.1(a), (b) & (j). The TYC General Operating Policy Manual, No. GOP.61.01, effective March 25, 1994, at page four, provides:

> Discussion [of right to protection from physical harm]: Every TYC staff member has an affirmative obligation to take every reasonable precaution to protect youth from harm. This obligation may take many forms, from ensuring adequate coverage in the dorm to providing a qualified lifeguard at pool side. Some youth will suffer injury; that is an inevitable part of growing up. The agency's obligation is to ensure that it does nothing which contributes to or causes such injury.

Thus, the administrative code imposes an affirmative duty on appellants to protect its residents, including appellee, from physical harm. The TYC General Operating Policy Manual provides that every member of the TYC staff has an affirmative obligation to ensure it does nothing which contributes to or causes such injury, and that the agency has the obligation to ensure that it does nothing which contributes to or causes such injury.

At trial, Gracia acknowledged he was required to comply with the TYC policies, and appellants stipulated they must comply with TYC policies and procedures, including the affirmative obligation to take every reasonable precaution to protect youth from harm. Appellee argues that this acknowledged duty is one of ordinary care and, as such, appellants have a common law duty to protect their residents from physical harm following the above referenced guidelines.

Common law negligence rests primarily upon the existence of reason to anticipate injury and the failure to perform the duty arising on account of that anticipation. *See Wal–Mart Stores,* 960 S.W.2d at 130 (citations omitted). Therefore, when determining whether a common law duty exists, the foremost and dominant consideration is foreseeability and likelihood of the risk. *See id.* (citations omitted). Factors weighing against imposition of a duty are the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Id.*

A standard of care on the part of appellants already exists toward their residents who might be injured by unreasonable conduct in supervising, organizing or instructing recreational activities. This standard, as expressed above, is set out in the Texas Administrative Code and discussed in the TYC manual. We see no reason why this standard of care should not be considered one of ordinary care under the facts of this case. Accordingly, we conclude that appellants have a legally cognizable duty: a duty to protect their residents from physi-

cal harm following the above referenced guidelines.

 Having found a duty exists, we next address appellants' complaint that there is no evidence that appellants breached any duty. When reviewing a no evidence point of error, we must consider only the evidence and reasonable inferences tending to support the jury findings. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275–76 (Tex.1995); *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). If there is any evidence of probative force to support the finding, we must overrule the point of error and uphold the jury's finding. *See Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If more than a scintilla of evidence supports the jury's finding, a no evidence challenge fails. *See Stafford*, 726 S.W.2d at 16.

 In support of the no evidence contention regarding breach of duty, appellants cite authorities that stand for the proposition that the mere occurrence of an accident is not evidence of negligence.[5] This proposition of law is well-founded and is even acknowledged in TYC's guidelines.[6] Nonetheless, this proposition is not determinative under the facts of this case.

Appellants further argue that any person reasonably familiar with athletics knows that any athlete may become injured despite all best efforts put forth by others involved in the activity. Appellants contend there is no evidence from which a jury could reasonably find that the decision to allow the game to occur, while leaving appellee with the choice of whether to play, is negligence. Appellants also argue they cannot ensure that each resident will not suffer some accidental injury as a result of athletic participation, and that appellee was also aware that athletic activities entail some foreseeable risk. However, this is an argument more appropriately made in a sports injury case. *See Moore*, 976 S.W.2d at 741–42; *Greer*, 921 S.W.2d at 328–29. Having concluded this is not a sports injury case, appellants' argument is not, therefore, persuasive. Furthermore, although appellants may not be insurers of their residents' safety during recreational activities, appellants do have a duty to take every reasonable precaution to protect its youth from harm.

The record in this case reveals that appellee was under the control and direct supervision of appellants through their supervisor, Gracia. Gracia was responsible for seeing after the residents' safety while they were at the park and made the decision that the residents could play tackle football. Appellee testified that Gracia told the residents he needed to watch each and every one of them, and that several residents wanted to play, so he said, "Come on. I can't watch you over there.

**5.** *See H.E. Butt Grocery Co. v. Godawa*, 763 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1988, no writ) (slip and fall in grocery store). *See also Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex.1968) (wheat crop destroyed by fire when truck driven into dry wheat); *Wells v. Texas Coal & Oil Co.*, 140 Tex. 2, 164 S.W.2d 660, 662 (1942, opinion adopted) (automobile accident); *Molina v. Payless Foods, Inc.*, 615 S.W.2d 944, 947 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) (railing tipped over and injured child's hand); *Southwestern Bell Tel. Co. v. McKinney*, 699 S.W.2d 629, 634 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (accident involving overhead telephone line); *West v. Slaughter*, 384 S.W.2d 185, 188 (Tex.Civ.App.—Waco 1964, writ ref'd n.r.e.) (plane destroyed by fire).

**6.** The TYC operating manual sets out that "[s]ome youth will suffer injury; that is an inevitable part of growing up." However, the manual adds that "[appellants'] obligation is to ensure that [they do] nothing which contributes to or causes such injury."

I can't be watching you and, you know, you've got to come and play." Gracia testified that someone suggested, "Hey, let's play football," and Gracia said, "Sure. Whatever. Why not?" Appellee testified he had never been trained to play organized football and had never played tackle football. Gracia believed appellee had experience playing football because somebody may have told him so, but Gracia had not actually seen appellee play. Gracia testified he had not given appellee any instruction in playing football, and, as far as he knew, none of the residents had received any instructions from the Home about playing football. Gracia had not seen the residents exercising to strengthen neck or leg muscles. Additionally, it is undisputed that the residents of the Home were encouraged to participate in recreational and exercise activities, and, in fact, received points for participating in such activities. The points led to privileges. Appellee testified that, although he did not know if he would have received fewer points for not participating in the football game, he could have received fewer.

These are all factors from which a jury could infer that appellants failed to exercise due care in protecting appellee from physical harm; in taking every reasonable precaution to protect appellee from physical harm.

Considering the evidence and reasonable inferences tending to support the jury's findings, we conclude there is more than a scintilla of evidence to support the finding of negligence as to appellants duty to protect appellee from physical harm. Thus, appellants' no evidence argument regarding breach of duty fails.

 Appellants also argue in their second issue that if they were negligent,

appellee was also negligent for participating in the game.[7] When a party with the burden of proof, as with comparative negligence in this case, complains on appeal from an adverse jury finding, the appropriate issue is "whether the matter was established as a matter of law" or "whether the jury's finding was against the great weight and preponderance of the evidence." See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.1983); La Grange v. Nueces County, 989 S.W.2d 96, 99 (Tex. App.—Corpus Christi 1999, pet. denied). In this case, appellants contend the jury's failure to place any responsibility on appellee is against the great weight and preponderance of the evidence.

 In reviewing such a challenge, we must first examine the record to determine if there is some evidence to support the finding; if such is the case, then we must determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). In reviewing great weight issues which complain of a jury's failure to find, the supreme court has admonished the courts of appeals to be mindful of the fact that the jury was not convinced by a preponderance of the evidence. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex.1988). In such cases, a court of appeals may not reverse simply "because [it] concludes that the evidence preponderates toward an affirmative answer." Id. We may only reverse where "the great weight of the evidence supports an affirmative answer." Id.

Having examined the record as set out above and being mindful of the fact that

---

**7.** In response to question number 1, the jury attributed no negligence to appellee. It found

Southwest Key, its employees, agents or servants one hundred percent responsible.

the jury was not convinced by a preponderance of the evidence that appellee's actions contributed to his injury, we conclude that there is some evidence to support the jury finding. Further, in light of the entire record, we conclude that the great preponderance of the evidence does not support an affirmative answer.

■■■■■ Finally in issue two, appellants complain there is no evidence that their failure to provide protective equipment constituted negligence which proximately caused appellee's injury. Proximate cause consists of two elements: cause-in-fact and foreseeability. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476 (Tex.1995). Appellants complain only that there is no evidence to support the first element. "Cause-in-fact" means that a negligent act or omission is a substantial factor in bringing about the injury and without which no harm would have been incurred. *See Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). Further, lay testimony is adequate to prove causation if general experience and common sense will enable a lay person to determine the causal relationship between the event and the condition with reasonably probability. *See Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 733 (Tex. 1984). Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation. *See id.* In such cases, lay testimony can provide both legally and factually sufficient evidence to prove the causal relationship. *See Blankenship v. Mirick,* 984 S.W.2d 771, 775 (Tex.App.—Waco 1999, pet. denied).

Appellants contend that appellee's sole liability theory is that appellants were negligent in failing to provide appellee protective equipment. However, appellee asserts, and this Court agrees, that he also proceeded on other theories of liability, including negligence in supervision, instruction and organization of other aspects of the football game. Testimony was offered to show that there were reasonable alternative activities available from which Gracia could have chosen, such as soccer or touch football. There was also testimony that showed appellee's lack of experience playing organized tackle football. Further, it was emphasized that appellants encouraged their residents to earn participation points through recreational activities. Appellee was under appellants' care and supervision. As supervisor for appellants, Gracia was to use reasonable care to protect the residents from injury. Specifically, he was to ensure that he did nothing which contributed to or caused injury. Gracia authorized the game of tackle football and took responsibility for making that decision. Gracia decided that the game would be played with the understanding that all tackling would take place below the waist and full contact would be allowed.

Appellee testified that the injury occurred during the football game when he was carrying the ball and was tackled by several players. One of the players grabbed appellee by his legs. When appellee looked at his leg, he knew something was wrong and started screaming for help. Appellee testified he pushed at his leg to reposition it and it started getting "real fat," and then began hurting "real bad."

We conclude that appellants' negligent act of supervising the residents of the Home and organizing a tackle football game with full contact below the waist was a substantial factor in bringing about appellee's injury and without which no harm would have been incurred. We hold that under these facts, expert testimony was not required to prove that the tackle football game authorized by appellants caused

appellee's injuries. The jury could have reasonably inferred that a prudent supervisor would have adequately supervised, organized and instructed the residents regarding the game or would have chosen a more reasonable activity, and that the lack of or inadequate supervision, organization and/or instruction in the instant case was the proximate cause of appellee's injury. Having reviewed the record, we conclude that the evidence is legally sufficient to support the jury's finding as it relates to proximate cause.

Accordingly, having considered and rejected each of appellants' attacks on the evidence supporting the jury's findings, issue number two is overruled.

Finally, by their third issue, appellants contend that even if there is some evidence to support a negligence theory, appellants were entitled to an offset for amounts it had previously paid for appellee's medical care. However, our review of the record reveals no evidence to support appellants' argument that they paid appellee's medical bills and are entitled to an offset. Furthermore, parents possess a cause of action to recover medical expenses incurred by their minor children. *See Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex.1983). Because appellee's medical bills arising from his knee injury accrued while he was a minor, they were the legal responsibility of his mother, Christina Perez. A take-nothing judgment was entered against Perez; thus, she did not receive an award for medical expenses in this case. Therefore, appellants are not entitled to an offset of an amount that was never awarded. Appellants' third issue is overruled.

Accordingly, the judgment of the trial court is affirmed.