NO. 07-03-0215-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 14, 2004

_____

NED KINGSLEY AND WIFE, ANNETTE KINGSLEY,
INDIVIDUALLY AND AS NEXT FRIENDS OF
JENNIFER KINGSLEY, A MINOR CHILD,

Appellants

v.

BRYAN KEITH PAULSON, and
FULTON PERFORMANCE PRODUCTS, INC.,

Appellees

_____

FROM THE 217TH DISTRICT COURT OF ANGELINA COUNTY;

NO. 31,118-98-4; HON. DAVID V. WILSON, PRESIDING

_____

*Memorandum Opinion*

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Appellants Ned Kingsley, Annette Kingsley, and their daughter Jennifer Kingsley (collectively referred to as the "Kingsleys") appeal from a take-nothing judgment rendered in favor of appellees Bryan Keith Paulson (Paulson), and Fulton Performance Products, Inc. (Fulton). The Kingsleys sued to collect damages for injury suffered by Jennifer as a result of a trailer disconnecting from the truck driven by Paulson and striking the vehicle

driven by Jennifer. The jury found that the coupler on the trailer was not manufactured by Fulton. So too did it answer "no" to the question about whether the negligence "if any" of Paulson proximately caused the occurrence. The Kingsleys attack the former as being both legally and factually insufficient and challenge the latter as being factually insufficient. We affirm the judgment of the trial court.

## *Background*

On January 18, 1998, Paulson was towing an old propane tank that had been converted into a barbeque pit. On a straight section of the highway, the trailer became separated from his truck and struck the vehicle driven by 16-year-old Jennifer. The trailer and the trailer coupler were not available at trial; however, with photographs the Kingsleys attempted to prove that the trailer coupler was a Fulton Model A-6 coupler which required a 2 9/32 inch hitch ball instead of the two inch ball used by Paulson. Although the Fulton A-6 coupler required a certain size hitch ball, that information was not displayed on the coupler used in this incident. Paulson also used a safety chain to secure the trailer to his truck but at the time of separation, it did not prevent the accident.

At trial, the jury answered "no" to the question "[w]as the coupler in question a Fulton Coupler?" and to the question "[d]id the negligence, if any, of Bryan Keith Paulson proximately cause the occurrence in question?" Based on those findings, the trial court entered judgment in favor of Fulton and Paulson. On appeal, the Kingsleys contest the jury's answers to both questions.

## *Type of Coupler*

The Kingsleys contend the evidence was insufficient to support the jury's finding that the subject coupler was not a Fulton A-6 coupler and that they proved as a matter of law

2

that it was. When a party attacks the legal sufficiency of an adverse finding on an issue upon which he has the burden of proof, he must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). In making such a review, we must examine the record for evidence that supports the jury finding while ignoring all evidence to the contrary. *Southwest Key Program, Inc. v. Gil-Perez,* 81 S.W.3d 269, 274 (Tex. 2002); *Dow Chemical Co. v. Francis,* 46 S.W.3d at 241. No evidence supports the verdict when, among other things, the record discloses a complete absence of evidence of a vital fact or the evidence tending to prove the vital fact is no more than a scintilla. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727-28 (Tex. 2003). If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chemical Co. v. Francis,* 46 S.W.3d at 242. In attacking the factual sufficiency of the evidence, the Kingsleys must demonstrate that the adverse finding is against the great weight and preponderance of the evidence, after a consideration and weighing of all the evidence, and that such finding is clearly wrong and manifestly unjust. *Id.*

With these principles in mind, we turn to the record before us. It was the Kingsleys' burden to prove that the coupler was a Fulton coupler. Fulton's expert, John Abromavage, director of engineering services for U-Haul International, testified that from the photographs alone, the coupler could not be identified to any particular manufacturer. He buttressed this opinion by referring to affidavits obtained by the Kingsleys from other coupler manufacturers. One affidavit stated that the coupler was a Fulton 308 coupler but

3

Abromavage was able to distinguish that model coupler from the one in the photograph. Another affidavit indicated the coupler was forged and made by either Fulton or Wallace Forge. However, Abromavage concluded that the coupler in question was not forged, but if it were, it could not be one of Fulton's since the latter did not make forged couplers. A third affidavit merely stated it was not made by Atwood Mobile Products, and a fourth indicated only that it was not made by Valley Industries. There was additionally evidence from a Fulton catalog indicating that the A-6 coupler was not made after 1963, although experts for the Kingsleys indicated the coupler in question was made in the 1970's. Abromovage indicated that couplers were copied in other countries, and it was possible this particular coupler was a copy of a coupler. He also stated that the hand wheel style and lever lock system on the coupler in the photos were commonly used by other manufacturers and, because the photos did not show the ball clamp where there might be some differences in the shape, he could not determine a manufacturer.

Additionally, Karl Richter, former vice-president of engineering at Fulton, testified that Fulton stopped making couplers with a round hand wheel such as that in the photographs sometime in the early 60's. He could not say who was the manufacturer of the coupler, and he could not find any couplers in Fulton's catalog or brochures that were configured the same as the coupler in this incident.

The foregoing is some evidence from which it could be concluded that the jury was simply not convinced by a preponderance of the evidence that the coupler in question was manufactured by Fulton. *See Southwest Key Program, Inc.,* 79 S.W.3d 571, 580 (Tex. App.--Corpus Christi 2000), *rev'd on other grounds,* 81 S.W.3d 269 (Tex. 2002) (holding that, bearing in mind the jury was not convinced by a preponderance of the evidence that

4

the plaintiff's actions contributed to the injury, there was some evidence to support the jury's failure to place any responsibility on plaintiff and the preponderance of the evidence does not support an affirmative answer). Because there is some evidence to support the finding, we cannot conclude that the Kingsleys established that the coupler was manufactured by Fulton as a matter of law.

We must now decide if the jury's finding is clearly wrong and manifestly unjust in light of all the evidence. The Kingsleys presented two experts on the subject of the coupler. The first, Charles Powell, a materials engineer working in failure analysis, testified that the coupling body length, hand wheel style, bolt style, and locking lever style on the subject coupler were "all products of Fulton." Moreover, he had "looked at every available source to try to see if there was any other hand wheeled coupler designed and shaped like this that was from a different manufacturer, and there are none." In his opinion, the coupling was not a forged coupler and was manufactured by the Fulton Company. His best estimate was that the coupler was made in the 1970's.

Seth Davlin, who owns Pro-Trak Trailers, testified that based on his experience with couplers and his perusal of a Fulton Catalog and blueprint and design drawings of a Fulton A-6 coupler, he believed that the coupler was a Fulton A-6 coupler manufactured in the middle 1970's. He also believed the coupler was forged. Davlin admitted there were more brands on the market than the three (Bulldog, Fulton, and Atwood) with which he had personal experience, and he had no familiarity with Fulton couplers manufactured in the 1950's or 1960's.

The Kingsleys argue that their experts presented opinions that the coupler was manufactured by Fulton while Fulton's experts were unable to opine who manufactured the

5

coupler. However, given the conflicting testimony among the various experts as to whether the coupler was forged, when it was manufactured, what model of coupler it was, and whether it could be attributed to Fulton or any manufacturer at all, it was for the jury to resolve the conflicts, determine the credibility of the evidence, and decide if the Kingsleys met their burden of proof. We cannot say that the jury's finding was so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. The Kingsleys' issues with respect to the jury finding as to the entity that made the coupler are overruled.

### Negligence of Paulson

The Kingsleys also challenge the jury finding that Paulson's negligence, if any, was not a proximate cause of the accident. They contend he was negligent because he failed to discern the proper size hitch ball to use, merely relied on what he was told by the previous owner, failed to check the capacity of the safety chain, and failed to properly secure it. Further, they argue, he admitted his negligence because he testified he had a duty to use "common sense" and, because no one disputes that the trailer separating from the truck was the proximate cause of the accident, the jury's finding was against the great weight and preponderance of the evidence. We overrule the issue.

The elements of negligence are duty, breach of that duty, and damages proximately caused by the breach. *Doe v. Boys Club of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). We also note that the issue of Paulson's negligence was submitted to the jury in broad form. Given this, the jury was not only asked to assess whether a duty was breached but also whether the breach proximately caused the resulting injuries, if any. So,

6

the Kingsleys must illustrate why the evidence touching upon each element of the cause of action was factually insufficient in order to win reversal.

The record shows that Paulson 1) owned the trailer about six months before the accident, 2) washed it, painted it, and put tail lights, wheel bearings, new tires, and new wheels on it after purchase, 3) was told by the prior owner that it had been towed with a two inch ball, 4) did not observe any writing or warning on the coupler when he cleaned it, 5) had towed the trailer three or four times prior to the accident using a two inch ball without problem, and 6) believed the coupler had been maintained and was in good condition. Furthermore, on the day of the accident, he 1) set the coupler on the ball, tightened the wheel down with his hand, used a pair of channel locks to tighten the wheel more, and picked up on the hitch to make sure it was coupled on "good and tight," 2) hooked a chain (the capacity of which was unknown) on one side of the bumper, ran it through the trailer hitch, and hooked it to the other side of the bumper, 3) stopped three times prior to the incident approximately every 50 miles and checked the hand wheel both with his hand and with the pliers, 4) had last checked the trailer 50-60 miles prior to the accident, 5) had not perceived any problem with the hitch prior to the accident, 6) had not backed the trailer or made any sharp turns prior to the accident, 7) was traveling on a straight highway at 45 to 55 miles an hour prior to the accident, 8) checked the coupler after the accident and it was still tight, and 9) observed the chain intact in the road after the accident.

Powell opined that if Fulton had placed a warning on the coupler as to the proper size of ball to use with it, Paulson should have been able to see it. However, there was no evidence that such a warning was on this particular coupler. Powell also stated he had not

7

seen the safety chains or how they were used.  Additionally, he opined that a person exercising common sense could put the coupler on a two inch ball, twist it down as far as it would go, pull up, and get a false sense of security that he had it on the right size ball. Powell attributed the cause of the accident to the use of too big a coupler for too small of a ball which caused separation due to insufficient strength.

Officer Brian Henry who responded to the accident determined that the hitch failed and there was either no chain or a defective chain.  However, he was unable to say whether the accident was due to the hitch and chains themselves or due to the use of them by the operator.  He did state it was the responsibility of the operator to make sure the trailer and vehicle towing it are correctly, properly, and securely attached.

Abromavage, however, testified that the only conclusion that could be reached as to the cause of the accident was that the coupling was forced off the ball.  Such could have been caused by some correction made on the road such as running onto the shoulder.

A legal duty must exist before a defendant is liable for negligence.  *Reeder v. Daniel,* 61 S.W.3d 359, 364 (Tex. 2001).  A duty is a legally enforceable obligation to conform to a particular standard of conduct. *Fitzpatrick v. Copeland,* 80 S.W.3d 297, 302 (Tex. App.--Fort Worth 2002, pet. denied); *San Benito Bank & Trust Co. v. Landair Travels,* 31 S.W.3d 312, 317 (Tex. App.--Corpus Christi 2000, no pet.).  Nowhere in the record do we find any specific evidence as to what Paulson should have done differently other than assure that the correct sized ball was used for a Fulton A-6 hitch.  Again, the latter purportedly utilized a 2 9/32" hitch ball, while the ball used by Paulson was two inches. Yet, as can be seen, the Kingsleys' hypothesis about why Paulson was negligent is dependent upon a finding that the hitch was a Fulton A-6.  Since the jury refused to so find,

8

the foundation upon which the Kingsleys base their contention is non-existent. In short, Paulson could not be negligent for failing to use a particular ball unique to a Fulton A-6 hitch when it was not determined that the hitch was of that manufacture. This and the evidence that Paulson used care to assure that the trailer was securely attached to the ball enabled the jury to conclude that he acted as a person of ordinary prudence under the same or similar circumstances.

Again, here, there was extensive evidence as to the actions taken by Paulson which actions the Kingsleys themselves admitted constituted some care. Additionally, some evidence appeared of record illustrating that the chain used by Paulson did not break but was intact after the incident. This supports the conclusion that the chain was not defective or of a strength insufficient to perform as intended. And, we are pointed to no evidence in the record as to the proper manner of securing a chain to a trailer and towing vehicle. Based on the record before us, we cannot say that the jury's verdict was or is clearly wrong or manifestly unjust.

Having overruled each issue, we affirm the judgment of the trial court.


Per Curiam