Affirmed and Majority and Dissenting Opinions filed September 27, 2007








Affirmed
and Majority and Dissenting Opinions filed September 27, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00822-CV

_______________

 

ROBIN CHRISMON AND LONNIE CHRISMON, Appellants

 

V.

 

HAROLD J. BROWN, INDIVIDUALLY AND AS AN AGENT OF
REGISTERED TEAMS OF THE AMATEUR SOFTBALL ASSOCIATION OF AMERICA, AND REGISTERED
TEAMS OF THE AMATEUR SOFTBALL ASSOCIATION OF AMERICA, Appellees

                                                                                                                                               


On Appeal from 127th District Court

Harris County, Texas

Trial Court Cause No. 04-00932

                                                                                                                                                

 

M A J O R I T Y   O P I N I O N

 








A volunteer
assistant coach on a girls softball team sustained injuries when she was struck
in the face by a bat that slipped from the hand of the volunteer head coach
during a softball drill.  The injured assistant coach and her husband appeal
the trial court=s summary judgment dismissing their claims
against the head coach and the softball association.  In reviewing the trial court=s summary judgment as to the
allegation that the softball association is vicariously liable for the head
coach=s alleged acts or omissions, we must determine what duties, if
any, one sports participant owes to another sports participant, which is an
issue of first impression in this court.  We hold that (1) a sports participant
owes no negligence duty to another sports participant regarding risks inherent
in the sport in question; (2) a sports participant owes a negligence duty to
another sports participant regarding risks that are not inherent in that sport;
and (3) regardless of whether the risk is inherent,  a sports participant owes
a duty not to cause injury to another sports participant by gross negligence or
intentional conduct.  

In response to the softball association=s no-evidence ground, the
plaintiff/assistant coach did not produce evidence showing that the risk in
question was not inherent in the sport in which she was engaged when she was
injured.  The summary-judgment evidence did not raise a fact issue as to
whether the head coach engaged in gross negligence or intentional conduct.  Therefore, this
court affirms the trial court=s summary judgment as to the assistant
coach=s
vicarious-liability claims against the softball association.  We also conclude
the trial court correctly granted (1) the head coach=s motion for
summary judgment in which he asserted immunity under the Charitable Immunity and Liability Act of
1987,
and (2) the softball association=s motion for
summary judgment in which it sought dismissal of all direct-liability claims
against it and all claims asserted by the assistant coach=s husband.  Though
this is the first case in which this court has adopted and applied the
inherent-risk doctrine, under Texas Supreme Court precedent, we do not have the
power to reverse the trial court=s error-free
judgment and remand in the interest of justice.  Therefore, we affirm the trial
court=s judgment. 

                               I. 
Factual and Procedural Background








Appellant Robin Chrismon and appellee
Harold J. Brown volunteered to serve as coaches through appellee Registered
Teams of the Amateur Softball Association of America (ARegistered Teams@).  In January 2002, while acting as
a volunteer assistant coach at a twelve-year-old-and-under girls softball team
practice and/or tryout,[1] Robin was
injured when a bat being swung by Brown slipped from his hand and struck Robin
in the face.

As relevant to this appeal, Robin
sued Brown and Registered Teams alleging negligence, gross negligence, and
assault.  Robin=s husband, Lonnie Chrismon, asserted claims for loss of
household services, loss of consortium, loss of income, and mental anguish.

Brown filed a traditional motion for
summary judgment, asserting the affirmative defense of immunity under the
Charitable Immunity and Liability Act of 1987 (Athe Act@).[2] 
Registered Teams filed motions for summary judgment, asserting, among other
things, that there was no evidence as to: (1) a legal duty, (2) a breach of
duty, and (3) damages proximately resulting from the breach.  The trial court
granted summary judgment dismissing all of the Chrismons= claims.

                                                   II. Standards of Review








In reviewing a traditional summary
judgment, we consider whether the successful movant at the trial level carried
the burden of showing that there is no genuine issue of material fact and that
judgment should be granted as a matter of law.  KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  To be
entitled to summary judgment, a defendant must conclusively negate at least one
essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Under this standard, we take as
true all evidence favorable to the nonmovant, and we make all reasonable
inferences in the nonmovant=s favor.  Dolcefino v. Randolph, 19 S.W.3d 906, 916
(Tex. App.CHouston [14th Dist.] 2000, pet. denied).  If the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  Id.

In reviewing a no‑evidence
summary judgment, we ascertain whether the nonmovant pointed out summary‑judgment
evidence of probative force to raise a genuine issue of fact as to the
essential elements attacked in the no‑evidence motion.  Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 206B08 (Tex. 2002). 
We take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences therefrom in the nonmovant=s favor.  Dolcefino,
19 S.W.3d at 916.  A no‑evidence motion for summary judgment must be
granted if the party opposing the motion does not respond with competent
summary‑judgment evidence that raises a genuine issue of material fact. 
Id. at 917.  When, as in this case, the trial court does not specify in the
order granting summary judgment the grounds upon which the trial court relied,
we must affirm summary judgment if any of the independent summary-judgment
grounds is meritorious.  See Ramco Oil & Gas Ltd. v. Anglo-Dutch
(Tenge) L.L.C., 207 S.W.3d 801, 826 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).

                                                                 III. Analysis

A.        Did
the trial court err in granting the volunteer head coach=s motion for summary judgment?

In their first issue, the Chrismons
challenge the summary judgment for Brown, the volunteer head coach, on the
ground that a fact issue exists as to whether Brown=s conduct fell outside the scope of
civil immunity because it was wilfully negligent, or committed with conscious
indifference or reckless disregard for the safety of others.








Volunteers of certain charitable
organizations are generally immune from civil liability for any act or omission
resulting in death, damage, or injury if the volunteer was acting in the course
and scope of the volunteer=s duties or functions in the organization.  See Tex. Civ. Prac. & Rem. Code Ann. ' 84.004(a) (Vernon 2005). Brown=s summary-judgment evidence
establishes (and the Chrismons do not dispute) that Registered Teams qualifies
as a charitable organization under the Act and that Brown was acting in the course
and scope of his duties as a volunteer of Registered Teams when the accident
occurred.  This evidence proves as a matter of law that Brown is entitled to
immunity under the terms of section 84.004(a) of the Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 84.004(a).

This immunity, however, does not
apply to an act or omission that is intentional, wilfully negligent, or done
with conscious indifference or reckless disregard for the safety of others.  See
id. ' 84.007(a).  Though the Chrismons do
not assert that Brown=s conduct was intentional, they do assert that the
summary-judgment evidence raises a genuine issue of fact as to whether Brown=s act or omission falls within the
statutory exception as being Awilfully negligent, or done with conscious indifference or
reckless disregard for the safety of others@ (hereinafter the AException@).  See id.  








Although the Act is twenty-years old,
research has not revealed any case in which a court has interpreted the
statutory language of the Exception.  However, in interpreting language from
other statutes, the Texas Supreme Court, this court, and other courts of
appeals have equated each of these three terms with gross negligence.  See,
e.g., Burk Royalty Co. v. Walls, 616 S.W.2d 911, 916B20 (Tex. 1981) (equating willful negligence,
conscious indifference to the welfare of others, and reckless disregard for the
rights of others with gross negligence); Morrone v. Prestonwood Christian
Academy, 215 S.W.3d 575, 582 (Tex. App.CEastland 2007, pet. denied) (equating
willful misconduct and reckless disregard with gross negligence); Dunlap v.
Young, 187 S.W.3d 828, 835B36 (Tex. App.CTexarkana 2006, no pet.) (equating willful negligence and
reckless disregard with gross negligence); Hernandez v. Lukefahr, 879
S.W.2d 137, 141B42 (Tex. App.CHouston [14th Dist.] 1994, no writ) (equating willful
negligence and conscious indifference with gross negligence); Wheeler v.
Yettie Kersting  Mem. Hosp., 866 S.W.2d 32, 50 & n.25 (Tex. App.CHouston [1st Dist.] 1993, no writ)
(equating willful negligence and reckless disregard with gross negligence). 
Therefore, we conclude that, to fall within the Exception, the volunteer=s act or omission must constitute Agross  negligence,@ defined as an act or omission: (a)
which, when viewed objectively from the standpoint of the actor at the time of
occurrence, involves an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and (b) of which the actor has
actual, subjective awareness of the risk involved, but nevertheless proceeds
with conscious indifference to the rights, safety, or welfare of others.  See
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994); see
also Tex. Civ. Prac. & Rem. Code
Ann. ' 41.001(11) (Vernon Supp. 2006).  

The Chrismons assert there is a fact
issue regarding the Exception based on summary-judgment evidence showing the
following:

!         Brown stood in an inappropriate or dangerous
position while hitting softballs with a bat that he held with only one hand.

 

!         Brown did not warn Robin that she might be in
a position of danger.

 

!         Brown gave no safety instructions to anyone
on the day of the incident.

 

!         Brown took no special precautions to make
sure the bat would not fly out of his hand.

 

!         Brown knew of the possibility that the bat
could fly out of his hand and strike another person.

 

!         Brown allowed the bat to fly out of his hand,
travel at a high rate of speed, and hit Robin in the face.

 

!         No one other than Brown had anything to do
with that bat hitting Robin in the face.

 

!         Brown did not have any excuse or reason for
letting the bat go.

 

!         Brown acknowledges that he was responsible for Robin=s injuries.  He accepts that
responsibility and wishes this accident had not happened.








The Chrismons, however, cite no
evidence that Brown=s alleged acts or omissions, when viewed objectively from
Brown=s standpoint at the time of the
incident, involved an extreme degree of risk, considering the probability and
magnitude of the potential harm to others.  The Chrismons cite no evidence
showing that despite his actual, subjective awareness of such a risk, Brown
proceeded with conscious indifference to the rights, safety, or welfare of
others.  See Diamond Shamrock Ref. Co. v. Hall, 168 S.W.3d 164, 171B73 (Tex. 2005) (concluding there was
no evidence of gross negligence where a defendant knew that certain valves were
leaking, but did not know that it presented any danger of a compressor explosion);
Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234B35 (Tex. 2004) (same where defendant
had no actual awareness that the replacement parts it was installing on its
vehicles were defective); and Wal-Mart Store, Inc. v. Alexander,
868 S.W.2d 322, 327 (Tex. 1993) (same where defect did not pose an extreme risk
of injury for failing to warn and repair a defect, when no other persons had
fallen because of it).  All of the evidence, including Robin=s own testimony, shows that Brown was
hitting ground balls in a routine way and that the incident, though terribly
unfortunate, was purely accidental.  Because Brown=s summary-judgment motion and
evidence establish his defense of immunity as a matter of law, and because the
Chrismons= response and evidence failed to raise a fact issue as to whether the
Exception applies, the Chrismons= challenge to the summary judgment in
favor of Brown fails.[3]  Accordingly,
we overrule the Chrismons= first issue.

B.        Did
the trial court err in granting the softball association=s motion for summary judgment as to
direct liability?

The Chrismons alleged that Registered
Teams was directly liable for its own negligence in: (1) failing to implement
an appropriate safety program; (2) selecting Brown as its agent; and (3)
failing to notify the Chrismons that if Robin were injured while acting as a
volunteer assistant coach, Registered Teams would deny recovery because the
head coach was a volunteer in a charitable organization; therefore, Registered
Teams was Aguilty of fraud@ for failing to disclose those facts.








To counter Registered Teams=s no-evidence motion for summary
judgment, in which Registered Teams attacked the elements of legal duty, breach
of legal duty, and damages proximately resulting therefrom, the Chrismons, in
their summary-judgment response, merely stated that Robin=s deposition transcript and affidavit
were attached and that each Araises numerous fact issues that require a jury trial on the
merits of this case.@  However, the attached deposition transcript contains
roughly 120 pages of testimony, and the affidavit, besides containing a
recitation of Robin=s extensive background in softball, is no more than a
conclusory statement of her allegations against Brown.  Her affidavit does not
address the allegations of direct liability against Registered Teams at all.

To defeat a no-evidence motion for
summary judgment, the respondents are not required to marshal their proof; they
need only point out evidence that raises a fact issue on the challenged items. 
See Tex. R. Civ. P. 166a
cmt.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207-08
(Tex. 2002); San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 330B31 (Tex. App.CHouston [14 Dist.] 2005, no pet.). 
In her affidavit, Robin does not address the allegations of direct liability
against Registered Teams.  In their response to Registered Teams=s no-evidence motion for summary
judgment, the Chrismons do not specify which evidence in Robin=s deposition testimony allegedly
raises a fact issue as to any of the challenged elements of direct liability
against Registered Teams.  Therefore, the trial court did not err in granting
Registered Teams=s motion as to direct liability.  Accordingly, we overrule
the Chrismons= challenges to the summary judgment as to their direct-liability claims
against Registered Teams.  See San Saba Energy, L.P., 171 S.W.3d at
330B31.  

C.        Did
the trial court err in granting the softball association=s motion for summary judgment as to
the husband=s claims?








In their briefs, the parties
acknowledge that Lonnie=s claims for loss of household services, loss of consortium,
loss of income, and mental anguish as a result of Robin=s injury are derivative of Robin=s claims.  Registered Teams asserted
a no-evidence challenge to the essential element of Lonnie=s claimed damages.  In his initial
summary-judgment response to Registered Teams= motion, Lonnie did not attach or
point to any evidence allegedly raising a fact issue as to damages.  However,
in a supplemental response, Lonnie attached and pointed to his affidavit,
asserting that in it he raised a genuine issue of material fact as to the
element of damages.  In this affidavit Lonnie states the following:

I have
sustained the following actual damages as a result of the injuries received by
my wife Robin Chrismon which were caused by the acts or omissions of the
Defendants herein.  They are:

A.        Loss
of household services I have sustained in the past and in reasonable
probability will sustain in the future which are in excess of $1,000.00.

B.        Loss
of consortium sustained in the past and in reasonable probability will sustain
in the future which are in excess of $1,000.00.

C.        Loss
of income sustained in the past and in reasonable probability will sustain in
the future which I estimate to be in the range of $5,000.00 to $6,000.00 as of
this date.

These statements are conclusory. 
They provide no facts showing the basis for the alleged damages, the periods of
time in which they allegedly were suffered, or how the dollar amounts were
determined.  Two of the dollar amounts are simply stated as Ain excess of $1,000.00.@  These conclusory statements do not
raise a genuine issue of material fact precluding summary judgment.  See
Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp., 136 S.W.3d
227, 232 (Tex. 2004) (stating that even unobjected‑to conclusory
testimony does not raise a fact issue); Thomas v. Allstate Ins. Co., No.
14-05-00293-CV, 2006 WL 2290840, at *5 (Tex. App.CHouston [14th Dist.] Aug. 10, 2006,
no pet.) (mem. op.) (holding that conclusory statements in affidavit did not
raise a genuine issue of material fact regarding damages).  








On appeal, under his fourth issue,
Lonnie also states that portions of his deposition testimony raise a genuine
fact issue as to his damages.  Although Lonnie refers to various pages of the
transcript of his deposition, he does not provide any citations to the
appellate record showing this court what evidence he claims raises a fact
issue.  Therefore, we conclude that insofar as Lonnie=s challenge to the summary judgment
is based on fact issues allegedly raised by his deposition testimony, he has
waived that challenge.  See Tex. R. App. P. 38.1(h).  In any event, even absent briefing waiver, Lonnie
could not prevail on this point because he did not attach the transcript of his
deposition to any summary-judgment response in the trial court, and he did not
point the trial court to this evidence as allegedly raising a fact issue as to
his claimed damages.[4]  See San
Saba Energy, L.P., 171 S.W.3d at 330B31.  Lonnie never apprised the trial
court that he was relying on this evidence, nor did he specify how it raised
any fact issues in his favor (if indeed it did, which we do not address).  For
this additional reason, we find no merit in Lonnie=s challenge to this part of the
summary judgment.

We conclude the trial court did not
err in granting Registered Teams=s motion for summary judgment as to
Lonnie=s claims, and we overrule the fourth
issue in which Lonnie challenges this summary-judgment ruling.

D.        Did
the trial court err in granting the softball association=s motion for summary judgment as to
the vicarious-liability claims?








The Chrismons alleged that Registered
Teams is vicariously liable for Brown=s alleged acts or omissions (hereinafter Avicarious-liability
claims@).  Under these
claims, Registered Teams would be liable for the tort liability of the
volunteer head coach (Brown), Registered Team=s alleged agent. 
Although Brown is immune from negligence liability under Chapter 84 of the
Texas Civil Practice and Remedies Code, this immunity does not apply to the
potential vicarious liability of Registered Teams for the common-law torts of
Brown, its alleged agent.[5]  See Tex. Civ. Prac. & Rem. Code Ann. ' 84.004 (Vernon 2005). 
Therefore, to determine Registered Teams=s vicarious
liability, if any, we must analyze, under the common law, Brown=s potential tort
liability for Robin=s injuries. 

The Texas Supreme
Court has not yet spoken as to what standard of tort liability should be
applied vis-à-vis a personal-injury claim by one sports participant
against another sports participant.[6] 
See Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 271B72 (Tex. 2002). 
There are four main possibilities. 

First, in
fashioning liability rules in the sports-injury context, a few states apply a
general-negligence duty.  See id. at 271 (stating that, in sports-injury
cases, Aa few states
adhere to the traditional negligence standard@).  This approach,
though simple in application, unduly exposes sports participants to tort
liability as to risks inherent in the sport in which the injured person chose
to participate.  See Phi Delta Theta Co. v. Moore, 10 S.W.3d 658, 659B63 (Tex. 1999)
(Enoch, J., joined by Hecht, J., dissenting to denial of petition after court
determined it was improvidently granted); Davis v. Greer, 940 S.W.2d
582, 582B83 (Tex. 1996)
(Gonzalez, J., dissenting from denial of application for writ of error).  








In a second
approach, the majority of other states, and all Texas courts of appeals that
have addressed the issue, hold that there is no negligence duty in the
sports-injury context, but they conclude there is a duty not to cause injury by
reckless or intentional conduct.[7] 
See Monk v. Phillips, 983 S.W.2d 323, 324B26 (Tex. App.CFort Worth 1998,
pet. denied); Allen v. Donath, 875 S.W.2d 438, 440 (Tex. App.CWaco 1994, writ
denied); Hathaway v. Tascosa Country Club, Inc., 846 S.W.2d 614, 616B17 (Tex. App.CAmarillo 1993, no
writ); Connell v. Payne, 814 S.W.2d 486, 489 (Tex. App.CDallas 1991, writ
denied).  Though this standard does not impose a negligence duty as to risks
inherent in the sport, it has the negative effect of imposing no negligence
duty even as to risks of injury that are not inherent in the sport.[8] 
        

Under a third
approach, this court could hold that, in sports-injury cases, a participant owes
no duty to protect other participants from risks inherent in the sport C not even the duty
to refrain from reckless or intentional conduct; however, as to risks that are
not inherent in the sport, a participant owes a general negligence duty as well
as a duty to refrain from reckless or intentional conduct.  See, e.g., Davis,
940 S.W.2d at 582B83 (advocating this approach in dissent
from denial of application for writ of error).  Though this approach addresses
the risks of injury inherent in the sport, it goes too far by immunizing from
liability participants who intentionally injure other participants in cases in
which the risk of injury is inherent. 








A fourth approach,
which we conclude is best,[9]
is governed by the following legal standard:

!       Considering from an objective standpoint the
nature of the sport in question, the conduct that is generally accepted in that
sport, and the risks resulting from that conduct, if the risk that resulted in
the plaintiff=s injury is inherent in the nature of the sport in
which the plaintiff chose to participate, then a participant-defendant owes the
plaintiff no negligence duty.

!       Under this same inquiry, if
the risk that resulted in the plaintiff=s injury is not inherent in the nature of the sport in
which the plaintiff chose to participate, then a participant-defendant owes the
plaintiff an ordinary negligence duty.

 

!       Regardless of whether the risk that resulted in
the plaintiff=s injury is inherent in the nature of the sport in
question, a participant-defendant owes a duty not to engage in gross negligence
or intentional conduct causing injury to the plaintiff.[10]








See Phi Delta
Theta Co., 10 S.W.3d at 659B63 (Enoch, J., joined by Hecht, J.,
dissenting and arguing for a similar approach); see also Geiersbach v.
Frieje, 807 N.E.2d 114, 116B20 (Ind. Ct. App. 2004) (adopting this
approach and applying it to both coaches and players).[11] 
The trial court should determine as a matter of law the duty issue as to
whether the risk that resulted in the plaintiff=s injury is
inherent in the nature of the sport, but the trial court still needs to
consider evidence relevant to this issue.  

In his deposition,
Brown testified that, prior to the incident in question, a bat had flown out of
his hand while he was coaching this particular softball team.  Brown stated he
knew that there was a possibility that the bat could fly out of his hand.  At
her deposition Robin testified as follows:

!       Robin was injured while
involved in a drill in which Brown would hit ground balls and the players would
try to field the balls and throw them back to Robin (hereinafter AGround Ball Drill@).  

 

!       Robin had participated in
the Ground Ball Drill before the incident in question, and the players and
coaches would typically do the Ground Ball Drill during tryouts.

 








 

!       The Ground Ball Drill is Apretty routine,@ and there was nothing unusual
about the way the Ground Ball Drill was conducted.

 

!       Prior to this incident, Robin had never had
anything like this happen.

In her
summary-judgment affidavit, Robin testified as follows:

!       Robin has been involved in women=s softball as a player and coach for about twenty
years, and she is very familiar with all of the practices and drills in which
women softball players participate during practice sessions.

 

!         Because of her twenty years of experience,
Robin believes that she has special expertise and knowledge regarding women=s softball activities, including practice drills such
as the Ground Ball Drill.  Robin is very familiar with the Ground Ball Drill.

 

!         The technique that Brown used during the
Ground Ball Drill was very dangerous as shown by the serious injuries that
Robin received when an aluminum bat flew out of Brown=s hand at a high rate of speed directly into Robin=s face and mouth, causing her injury.


















Although Registered Teams asserted a
no-evidence challenge[12] as to duty,
Robin did not produce summary-judgment evidence bearing on the issue of whether
the risk that resulted in her injury was inherent in the nature of the sport in
which she was participating when she was injured.  The summary-judgment
evidence does not raise a fact issue as to whether, considering from an
objective standpoint (i) the nature of the sport in question, (ii) the conduct
that is generally accepted in that sport, and (iii) the risks resulting
therefrom, the risk that resulted in Robin=s injury is not inherent in the
nature of the sport in which she chose to participate.[13] 
Furthermore, presuming for the sake of argument that Registered Teams could be
vicariously liable for any intentional or grossly negligent conduct of Brown,
Robin does not claim that Brown intentionally caused her injury, and the summary-judgment
evidence does not raise a genuine issue of material fact as to whether Brown=s conduct constituted gross
negligence.[14]  Therefore,
the trial court did not err in granting Registered Teams=s motion for summary judgment as to
the vicarious-liability claims.[15]  Accordingly, we overrule Robin=s second and third issues in which
she challenges this summary-judgment ruling.[16]








E.        Can this
court reverse the trial court=s judgment as to the vicarious-liability claims in the interests of
justice and remand to the trial court to give the parties an opportunity to
present evidence regarding the inherent-risk legal standard?

 








In part of its appellate brief
Registered Teams asks this court to adopt the inherent-risk doctrine.  Robin
has not requested that, in the event this court does so, this court remand this
case to the trial court in the interests of justice.  But even if Robin had
requested this relief, it would not be available under Texas Supreme Court
precedent.  If this court reverses the trial court=s judgment, it may remand in the
interests of justice for another trial.  See Tex. R App. P. 43.3(b).  However, a court of appeals can
reverse the trial court=s judgment only when the trial court is in error.  See
Davis v. Bryan & Bryan, Inc. 730 S.W.2d 643, 644 (Tex. 1987) (holding
that the court of appeals can only reverse when there is error in the trial
court=s judgment and that, absent such
error, a court of appeals cannot reverse the trial court=s judgment in the interests of
justice); Estate of Clinton v. Southern Pac. Transp. Co., 709 S.W.2d
636, 639 (Tex. 1986) (stating that a court of appeals cannot reverse an
errorless judgment); Sears & Roebuck & Co. v. Marquez, 682
S.W.2d 772, 773 (Tex. 1982) (holding that courts of appeals may only reverse
the trial court=s judgment based on error in the judgment and cannot reverse
the judgment because the case has not been fully developed).  Interestingly,
the Texas Supreme Court has held that it has the power to vacate the errorless
judgments of the trial court and court of appeals and remand to the trial court
for further proceedings based on a change in the law.  See In re Doe 4,
19 S.W.3d 322, 327 (Tex. 2000); In re Doe 2, 19 S.W.2d 278, 283B84 (Tex. 2000).  However, our high
court has based these holdings on subsection (f) of Texas Rule of Appellate
Procedure 60.2; the analogous rule for the courts of appeals does not contain
this subsection.  Compare Tex. R
App. P. 60.2 with Tex. R
App. P. 43.2; see also In re Doe 4, 19 S.W.3d at 327; In re
Doe 2, 19 S.W.2d at 283B84.  Thus, under current law, the Texas Supreme Court has the
power to vacate the trial court=s judgment based on a change in the law and remand this case
to the trial court for further proceedings, but courts of appeals do not have
this power.  Therefore, we cannot reverse the trial court=s judgment unless we find error that
has been preserved (unless preservation is unnecessary) and assigned on
appeal.  We have found no such error in this case.[17]

                                                             IV. Conclusion

Robin does not claim that Brown
intentionally caused her injury, and the summary judgment evidence does not
raise a genuine issue of material fact as to whether Brown=s conduct constituted gross negligence. 
The trial court did not err in granting Brown=s motion for summary judgment based
on his defense of immunity.  Likewise, the trial court did not err in granting
summary judgment as to all direct-liability claims against Registered Teams and
as to all of Lonnie=s claims. 








As a matter of first impression in
this court, we hold that (1) a sports participant owes no negligence duty
to another sports participant regarding risks inherent in the sport in
question; (2) a sports participant owes a negligence duty to another sports
participant regarding
risks that are not inherent in that sport; and (3) regardless of whether the
risk is inherent,  a sports participant owes a duty not to cause injury to
another sports participant by gross negligence or intentional conduct.  The
summary-judgment evidence did not raise a fact issue as to whether the risk in
question is inherent in the sport in which Robin was engaged when she was
injured.  The trial court correctly granted summary judgment as to the
vicarious-liability claims, and this court cannot reverse because that ruling
was not in error  and because courts of appeals cannot reverse errorless
judgments and then remand in the interests of justice based on a new
development in the law.  Therefore, having found no error, we affirm the trial
court=s judgment.

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Judgment rendered and Majority and
Dissenting Opinions filed September 27, 2007.

Panel consists of Justices Fowler,
Frost and Edelman. (Edelman, J., dissenting).*









[1]           While Brown hit grounders to the players on
the field, Robin was a short distance away catching  balls that were thrown
back.





[2]           See Tex. Civ. Prac. & Rem. Code Ann. '' 84.001B.008
(Vernon 2005).





[3]           The Chrismons refer to various objections
they lodged against an expert affidavit attached to Brown=s motion for summary judgment; however, even ignoring
this affidavit, the evidence conclusively proves Brown=s defense of immunity.  Therefore, we need not address
the objections to this affidavit.





[4]           In no part of any summary-judgment response
does Lonnie describe or refer to the transcript of his deposition.  Registered
Teams, however, attached excerpts from the transcript of Lonnie=s deposition to its reply to Lonnie=s summary-judgment response.





[5]           In their fifth issue, the Chrismons
challenge the summary judgment granted in favor of Registered Teams on the
ground that the Act allows charitable organizations to be held vicariously
liable for the acts and omissions of volunteers who are themselves immune from
liability.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 84.004(e)
(Vernon 2005) (AThe provisions of this section apply only to the
liability of volunteers and do not apply to the liability of the organization
for acts or omissions of volunteers.@); 
Howle v. Camp Amon Carter, 470 S.W.2d 629, 630 (Tex. 1971) (abolishing
common-law doctrine of charitable immunity and holding that a charitable
enterprise is subject to vicarious liability under the rule of respondeat
superior that is applicable to business organizations operated for profit).
However, because Registered Teams=s
motions for summary judgment did not assert immunity, this issue lacks merit,
and we overrule it.





[6]           We need not and do not address the duties
owed by a nonparticipant in a sport to a participant. 





[7]           Our dissenting colleague cites three
additional cases.  See post at p. 4, n.7. However, two of these cases
are not on point because they did not raise the issue of the duty owed by one
sports participant to another sports participant.  See Southwest Key
Program, Inc. v. Gil-Perez, 79 S.W.3d 571, 575-76 (Tex. App.CCorpus Christi 2000), rev=d on other grounds, 81 S.W.3d 269, 274B75 (Tex. 2002);
 Moore v. Phi Delta Theta, 976 S.W.2d 738, 741B42 (Tex. App.CHouston
[1st Dist.] 1998, writ denied).  The third case is also not on point because
the appellants in that case did not assign error as to the trial court=s dismissal of their negligence claim  Greer v.
Davis, 921 S.W.2d 325, 327 (Tex. App.CCorpus
Christi 1996, writ denied).  





[8]           Our dissenting colleague suggests that
adoption of this rule by four sister courts of appeals weighs against this
court=s adoption of the inherent-risk doctrine.  See post
at p. 4.  Though we have given due consideration to the decisions of these
sister courts, we are not bound to follow them and respectfully decline to do
so. 





[9]           Our dissenting colleague states that it is
not apparent to him why this legal standard regarding one sports participant=s duty to another sports participant is different from
the implied-assumption-of-the-risk doctrine, which the Texas Supreme Court has
abrogated.  See Farley v. M M Cattle Co., 529 S.W.2d 751, 758
(Tex.1975); post at p. 5, n.9.  However, we agree with Justice Hecht and
former Justice Enoch that there is a meaningful distinction between implied
assumption of the riskCan affirmative defense that applies even if the
defendant is negligent­Cand the inherent-risk doctrine, which is not an
affirmative defense but a legal standard for determining whether a sports
participant owes a duty at all.  See Phi Delta Theta Co., 10
S.W.3d at 659B63; see also Geiersbach v. Frieje, 807 N.E.2d
114, 116B20.





[10]          On appeal, Registered Teams has argued that
this court can affirm the no-duty ground based on either the inherent-risk
doctrine or the no-negligence-duty rule (the second approach stated above). 





[11]          Our dissenting colleague asserts that this
court is tacitly overruling prior decisions by the Texas Supreme Court in which
that higher authority Aaffirmatively declined to adopt@ the inherent-risk doctrine.  See post at p.
4.  The decisions to which our colleague refers are decisions to deny review in
cases in which other courts of appeals addressed tort-liability standards in
the sports-injury context.  However, by declining to exercise discretionary
review over decisions of our sister courts of appeals, the Texas Supreme Court
indicated that it was not satisfied that the opinions in those cases
declared the law correctly in all respects but was of the opinion that the application
for writ of error (or petition for review) presented no error of law which
required reversal or which was of such importance to Texas jurisprudence as to
require correction.  See In re T.L.C., 948 S.W.2d 41, 45 n.3. (Tex. App.CHouston [14th Dist.] 1997, no
pet.); see also Tex. R. App. P.
56.1 (b)(1).  The high court=s denial of review does not give any indication as to its view
regarding the merits of the issues decided by the courts of appeals.  See
Loram Maintenance of Way, Inc. v. Ianni, 210 S.W.3d 593, 596 (Tex. 2006); Matthews
Const. Co., Inc. v. Rosen, 796 S.W.2d 692, 694 n.2 (Tex. 1990).  Therefore,
these denials of review do not constitute decisions in which the Texas Supreme Court  has declined to adopt the
inherent-risk doctrine.  See Ianni,
210 S.W.3d at 596.  Although various justices on that court have advocated
granting review to adopt the inherent-risk approach to tort liability for
sports-injury claims, the high court has never addressed this issue, as the
court itself recently acknowledged.  See Southwest Key Program, Inc., 81
S.W.3d at 271B72 (noting Texas Supreme Court has
not addressed this issue but stating that court did not need to address it to
resolve the case at hand);  Phi Delta Theta Co., 10 S.W.3d at 658B63 (Tex. 1999) (Enoch, J., joined
by Hecht, J., dissenting to denial of petition after court determined it was
improvidently granted) (stating that court should grant review to address
important issue not yet addressed by the Texas Supreme Court and to adopt the
inherent-risk doctrine);  Davis, 940 S.W.2d at 582B83 (Tex. 1996) (Gonzalez, J.,
dissenting from denial of application for writ of error) (stating that Texas
Supreme Court should grant review to address this issue and to adopt the
inherent-risk approach).  Because the
Texas Supreme Court has not yet adopted a rule in this area, no ruling from
this court could conflict with any of that higher court=s precedents.  Therefore, this court can and should
address this important issue regarding Texas common-law tort liability, as have
four other Texas intermediate courts of appeals.  See Monk, 983 S.W.2d
at 324B26; Allen, 875 S.W.2d at 440; Hathaway,
846 S.W.2d at 616B17; Connell, 814 S.W.2d at 489.





[12]                      On appeal, Robin states that
Registered Teams did not assert in its May 23, 2005 motion that it owed no
legal duty to Robin and that Registered Teams did not assert any no-evidence
summary-judgment grounds against her claims.  However, in that motion,
Registered Teams asserted that APlaintiffs have
no evidence raising a genuine issue of material fact of any of the following
essential elements . . . legal duty owed by one person to another.@  Registered Teams asserted a no-evidence ground as to
duty.  See Patino v. Complete Tire, Inc., 158 S.W.3d 655, 659B60 (Tex. App.CDallas
2005, pet. denied).  Indeed, this exact language is contained in Registered
Teams=s June 7, 2005 motion for summary judgment, which
Robin concedes is a no-evidence motion.  Both in its motion and on appeal,
Registered Teams has asserted that its alleged agent Brown owed no negligence
duty to Robin.  Applying the inherent-risk doctrine, we conclude the
summary-judgment evidence does not show that Brown owed a negligence duty. 
Therefore, there is a question in this case as to the  existence of a
negligence duty. See post at pp. 2B3
(stating that this court and Registered Teams agree there is a duty and the
only real question is whether there is a fact issue as to breach of duty).

Our dissenting colleague also concludes that this
court cannot adopt the inherent-risk doctrine because no party specifically
asserted this doctrine in the trial court and because there is no
summary-judgment ground before this court that raises this issue.  We disagree.

Registered Teams asserted a no-evidence ground in
which it attacked the essential element of duty.  Whether a duty exists is a
question of law for the court to decide from the facts surrounding the
occurrence in question.  See Thapar v. Zezulka, 994 S.W.2d 635, 637
(Tex. 1999).  In its motion, Registered Teams asserted that there is no
evidence of this essential element of Robin=s
claims.  Under Texas Rule of Civil Procedure 166a(i), the burden shifted to
Robin to point to and present evidence that raised a genuine issue as to
whether there is a legal duty.  See Tex.
R. Civ. P. 166a(i).  Therefore, this court has reviewed the trial court=s summary-judgment ruling as to the
vicarious-liability claims based on Registered Teams=s no-evidence-of-duty ground.  

Registered Teams was not required to outline in its
motion the legal analysis under which it claims no duty arises under the facts
and circumstances surrounding this occurrence.  See Tex. R. Civ. P. 166a(i) & cmt.; Pico
v. Capriccio Italian Restaurant, Inc., 209 S.W.3d 902, 912 (Tex. App.CHouston [14th Dist.] 2006, no pet.) (affirming summary
judgment granting motion which asserted simple ground that there was no
evidence of duty, even though analysis of this ground required consideration of
alter ego and corporate liability issues); Mathis v. RKL Design/Build,
189 S.W.3d 839, 844B45 (Tex. App.CHouston
[1st Dist.] 2006, no pet.) (affirming summary judgment granting motion which
asserted simple ground that there was no evidence of duty, even though analysis
of this ground required consideration of various premises-liability issues); Patino
v. Complete Tire, Inc., 158 S.W.3d 655, 659B60 (Tex. App.CDallas 2005, pet. denied) (affirming summary judgment
granting motion which asserted simple ground that there was no evidence of
duty, even though analysis of this ground required consideration of various
legal principles regarding an employer=s
duties).  This court has held that an appellant preserved a no-duty complaint
by asserting in its motion for judgment notwithstanding the verdict that it
owed no duty, even though the analysis of this no-duty complaint involved
consideration of at least seven different issues.  See Entex, A
Division of Noram Energy v. Gonzalez, 94 S.W.3d 1, 4, 6B11 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied). 

Our dissenting colleague cites cases involving
traditional motions for summary judgment.  See post p. 2, n.1. 
Appellate courts must affirm no-evidence motions for summary judgment based on
the grounds stated therein.  However, under the no-evidence summary-judgment
rule, a ground that there is no evidence of legal duty is sufficient.  See
Tex. R. Civ. P. 166a(i) &
cmt.  Therefore, cases involving traditional motions for summary judgment are
not on point.  In addition, Science Spectrum, Inc. v. Martinez, does not
conflict with this court=s analysis.  See 941 S.W.2d 910, 911B12 (Tex. 1997).  In that case, the Texas Supreme Court
concluded that the one ground stated in the traditional motion C that the movant owed no duty to the plaintiff because
it did not control the premises where the accident occurredCwas insufficient to entitle the movant to summary
judgment because the movant would have a duty if it created a dangerous
condition even though it did not control the premises.  See id.  In the
case at hand, the ground was simply that there was no evidence of a legal duty.

Our dissenting colleague states that (1) Registered
Teams sought a no-evidence summary judgment as to duty based on a legal
standard that conflicts with the inherent-risk doctrine and (2) Registered
Teams acknowledged in its motion that Brown owed a negligence duty to Robin.  See
post at p. 2.  These assertions are incorrect.  Registered Teams asserted
that there is no evidence of duty.  As discussed above, Registered Teams did
not specify a legal standard for this no-evidence ground, and it was not
required to do so.  In the part of the motion quoted in the dissenting opinion,
Registered Teams asserts there is no evidence of a breach of any duty.  See
id.  Parties are allowed to assert alternative summary-judgment grounds.  See
Canchola v. White, No. 14-03-00826-CV, 2004 WL 3008673, at *4 (Tex. App.CHouston [14th Dist.] Dec. 30, 2004, no pet.).  If
there is no evidence showing duty, there cannot be any breach of duty. 
However, a no-evidence point as to the breach-of-duty element presumes for the
sake of argument that there is a duty.  Under the inherent-risk doctrine, if,
applying the above analysis, the risk that resulted in Robin=s injury is not inherent in the nature of the sport in
question, then Brown would owe Robin the ordinary negligence duty to
which Registered Teams refers in the portion of the motion quoted in the
dissenting opinion.  See post at p. 2.  Registered Teams=s reference to this negligence duty in argument under its
alternative ground attacking breach of duty is not an admission that Brown owed
Robin such a duty.  Registered Teams did not base its no-evidence ground
attacking duty on a legal standard that
conflicts with the inherent-risk doctrine.  

In his dissenting opinion, our esteemed colleague
argues that, because of the general nature of Registered Teams=s no-evidence ground, Robin was not on notice as to
the legal standard to be used in the duty analysis.  Given that the Texas
Supreme Court has not determined which legal standard applies in this context,
our dissenting colleague asks whether Robin was supposed to have presented
summary-judgment evidence as to the duty analysis under the inherent-risk
doctrine as well as the no-negligence-duty approach adopted by some of our
sister courts.  See post at p. 3, n.4.  Under the
no-negligence-duty, as a matter of law, a sports participant never owes another
sports participant a negligence duty.  Therefore, under that approach there
would not be any evidence Robin could have presented.  However, if there is
uncertainty as to the legal standard for analyzing duty, the nonmovant should
present evidence addressing the various possible legal standards.  See Tex. R. Civ. P. 166a(i) & cmt.; Pico,
209 S.W.3d at 912; Mathis, 189 S.W.3d at 844B45; Patino, 158 S.W.3d at 659B60.  Our dissenting colleague indicates that Robin had
no notice that the inherent-risk doctrine might apply, but at the time the
summary-judgment motion was served on Robin, the Texas Supreme Court had
recently described the inherent-risk doctrine as a possible legal standard, and
the high court noted that it had not yet decided which legal standard applies
under Texas law.  See
Southwest Key Program, Inc., 81 S.W.3d at 271B72.      

In sum, for the reasons stated above, it is appropriate for this court
to address the inherent-risk doctrine based on the no-evidence ground raised by
Registered Teams.





[13]          This court is not basing its decision on a
summary-judgment ground raised for the first time on appeal or on a conclusion
that Robin did not state a cause of action in her pleadings or on any basis
that should properly be raised by special exceptions.  See post at p. 3.





[14]          Likewise, the summary-judgment evidence does
not raise a genuine issue of material fact as to Brown=s alleged breach of duty by allegedly knowingly or
recklessly assaulting Robin.





[15]          Our dissenting colleague states that,
despite being aware of the inherent-risk doctrine, the Texas Legislature has
imposed it by statute only in the context of liability arising from equine
activities or livestock shows.  See post at p. 5, n. 9; see
also Tex. Civ. Prac. & Rem. Code
Ann. ' 87.001, et seq. (Vernon 2005) (stating that,
with some exceptions, persons are not liable for property damage or personal
injury to participants in an equine activity or livestock show if it results
from dangers or conditions that are an inherent risk of an equine activity or
livestock show).  However, this statute does not state that the inherent-risk
doctrine applies only in this context.  The Texas Legislature=s adoption of the inherent-risk doctrine in one
context does not prevent this court from adopting the inherent-risk doctrine in
another context.  

 





[16]          Although in these two issues the Chrismons
focus on the breach-of-duty element and Registered Teams=s assertion that the incident in question was Aan accident,@ we
consider a challenge to the trial court=s
no-evidence summary judgment to be a subsidiary question that is fairly
included in these two issues.  See Tex.
R. App. P. 38.1(e).  





[17]          Our dissenting colleague asserts that this
court should apply the Chevron factors and decide not to apply this
court=s decision regarding the inherent-risk doctrine
retroactively to the case at hand.  See State Farm Fire & Cas Co. v.
Gandy, 925 S.W.2d 696, 719B20 (Tex. 1996)
(applying the Chevron factors in determining whether Texas Supreme Court
decision should be applied retroactively). Presuming, without deciding, that
courts of appeals have the ability to make their decisions prospective only
based on these factors, the factors do not weigh in favor of an exception to
the norm of retroactivity for court decisions.  This court does not overrule
any past precedent, and the history, purpose, and effect of the rule do not
weigh against a retroactive application.  We do address an issue of first
impression in this court; however, the resolution of this issue for the
Fourteenth Court of Appeals was clearly foreshadowed by the decisions in other
courts of appeals and the Texas Supreme Court=s reference to the various possible rules.  See Southwest Key
Program, Inc., 81 S.W.3d at 271B72. 
Applying this decision to the case at hand does not produce substantial
inequitable results.  If this court had followed the decisions of the other
four courts of appeals that already have addressed this issue, there would be
no negligence duty as a matter of law, and this court=s judgment would be the same.  





*           Senior Justice Richard H. Edelman sitting
by assignment.